NOT FOR PUBLICATION                    [Dkt. Ents. 36, 38]


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE


| | |
|---|---|
| BRETT A. SUNKETT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL GYPSUM COMPANY and<br>JOHN DOES (I-X),<br><br>　　　　Defendants. | Civil No. 09-0721 (RMB/JS)<br><br>MEMORANDUM OPINION & ORDER |


Plaintiff Brett A. Sunkett asks the Court to reconsider its Opinion and Order granting summary judgment in favor of the defendant, NGC Industries, LLC (improperly pled as "National Gypsum Company"; hereinafter "Defendant" or "NGC").  For the reasons set forth below, this motion is DENIED.[1]

---

[1] Plaintiff filed his motion for reconsideration two days after the deadline for such motions expired under Local Rule 7.1(i) (providing a fourteen-day period to file a motion for reconsideration after entry of judgment).  Plaintiff did, however, move for an extension of time to file his reconsideration motion, but this motion was also untimely.  [Dkt. Ent. 36.]  While a motion filed out of time may be denied for that reason alone, the Court may relax this time limit to prevent "surprise or injustice."  See Lite, N.J. Federal Practice Rules, Comment 6.b to L. Civ. R. 7.1 (Gann) (collecting cases); L. Civ. R. 83.2(b).  Here, Plaintiff cited as a basis for his request the fact that the Court had made a "manifest error of law" by not applying the proper legal standard in its summary judgment opinion.  [Dkt. Ent. 36-1.]  Plaintiff apparently abandoned this argument, however, since his motion for reconsideration did not

1

## I. BACKGROUND

Plaintiff worked as a forklift operator at NGC.   In 2002, he was involved in an accident at work, which resulted in various orthopedic injuries to his back, neck, and shoulders.   Although he was able to return to work soon after the accident with some limitations, in the years following, he regularly received treatment for these injuries. NGC accommodated his needs, permitting him short-term leaves of absence for days at a time to obtain medical treatment.   At Plaintiff's request, Defendant permitted him to work with significant restrictions on his job responsibilities.   By March 2005, however, Plaintiff's injuries had intensified and he requested a medical leave of absence on the grounds that he could not perform the job.   He informed NGC that he did not know how long his condition would last. Defendant permitted Plaintiff to take a one-year leave of absence, beginning in August 2005.

Shortly before his leave was set to expire, Plaintiff sought to return to work.   Consistent with NGC's normal policy, Plaintiff was required to satisfy two steps.   First, Plaintiff had to obtain and submit documentation from his treating physician that he was able to return to work.   Second, Plaintiff was required to undergo an

_____

include it.   Additionally, the Court notes that because Plaintiff only filed his motion for an extension of time after the time for reconsideration motions had already expired, he must show that he failed to act because of "excusable neglect" under Federal Rule of Civil Procedure 6(b).   Since the Court denies his reconsideration motion, it declines to resolve whether Plaintiff has made such a showing.   His motion for an extension of time is therefore DISMISSED AS MOOT.   [Dkt. Ent. 36.]

evaluation at Worknet Occupational Health, the office that handled NGC's post-offer and return-to-work physicals.  Dr. Lucian Introcaso performed this evaluation for NGC and concluded that Plaintiff could not safely return to work as a forklift operator.  He submitted his report to NGC, which it relied on in terminating Plaintiff. Plaintiff filed suit alleging disability discrimination under the New Jersey Law Against Discrimination, and NGC subsequently moved for summary judgment.  The Court granted that motion, finding that NGC had satisfied its burden of proving that it reasonably arrived at its decision to terminate Plaintiff.

## II. STANDARD

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment under Rule 60(b).  Id.  In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Agostino v. Quest Diagnostics, Inc., Civ. No. 04-4362, 2010 WL 5392688, *5 (D.N.J. Dec. 22, 2010) (citing Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005)).  Local Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."  Id. (citing

Bryan, 351 F. Supp. 2d at 297).

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. den'd, 476 U.S. 1171 (1986) (internal citation omitted). Reconsideration is to be granted only sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994). Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 515-16 (D.N.J. 1996) (internal citation omitted). Reconsideration is only appropriate if: (1) there has been an intervening change in the controlling law; (2) evidence not available when the Court issued the subject order has become available; or (3) it is necessary to correct a clear error of law or fact to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (internal citations omitted). Further, "any evidence not supported with citation to the record and overlooked by the Court will not be grounds for a motion for reconsideration." Gilbert v. Camden City, Civ. No. 04-3268, 2007 WL 1040978, *4 (D.N.J. Apr. 4, 2007).

## III.     ANALYSIS

Plaintiff cites three grounds for reconsideration.

**First,** he argues that the Court should not have found that NGC met its burden of proof because it did not proffer any evidence that

4

it "actually consulted" with Dr. Introcaso before deciding to
terminate him.  As an initial matter, the Court notes that Plaintiff
is foreclosed from making this argument, since he could have asserted
it – but did not – at summary judgment.  NL Indus., 935 F. Supp. at
515-16.  In any event, this argument also fails on its merits.

     In Jansen v. Food Circus Supermarkets, Inc., 541 A.2d 682, 690
(N.J. 1988), the New Jersey Supreme Court explained that in "an
appropriate case," an employer might be expected to communicate with
its medical expert about the meaning of that expert's report before
relying on it to terminate an employee.  There, the employer
terminated the plaintiff (a meat cutter suffering from epilepsy) in
reliance on two expert reports that only mentioned general concerns
about epileptics working as meat cutters.  Id. at 685-87.  The Court
concluded that the employer should have ascertained from its experts
(1) whether another seizure was probable or just possible, and (2)
the probability that the plaintiff would cause serious harm to himself
or his coworkers if he suffered another seizure.  Id.  Since the
record did not reflect whether the employer had made such an inquiry,
the Court reversed the Appellate Division's finding that the employer
had reasonably arrived at its decision to discharge the plaintiff.
Id.

     The factors, which were dispositive in Jansen, are not at play
here.[2]  First, unlike the plaintiff in Jansen who suffered from

---

[2]  For a detailed analysis of Jansen and why it is distinguishable from
this case, see this Court's prior Opinion:  Sunkett v. Nat'l Gypsum

occasional seizures, here the Plaintiff had ongoing orthopedic injuries, so the inquiry was slightly different. The Court thus considered whether Dr. Introcaso's report conveyed the probability that Plaintiff could perform the forklift operator job despite his injuries without causing serious harm to himself or his coworkers. Dr. Introcaso's report provided NGC with precisely this information: it advised that Plaintiff was simply unable to do the job without endangering himself or others; in other words, that the probability of Plaintiff harming himself or others would be 100 percent.

Dr. Introcaso's report reflected that he had specifically tailored his assessment to Plaintiff's situation and the demands of the job. It included: (1) the results of his examination of the Plaintiff; (2) the requirements of the forklift operator position; (3) the fact that Plaintiff had been out of work for approximately one year due to back, neck and shoulder pain; (4) the fact that Plaintiff had received multiple medical treatments, including epidural injections, chiropractic care for herniated discs and other osteopathic injuries; (5) the fact that Plaintiff had been prescribed the narcotic Vicoprofen for pain; and (6) the fact that Plaintiff had applied for long-term disability benefits. Id. at *9-10. If this case were truly analogous to Jansen, Dr. Introcaso's report would have simply advised NGC of Plaintiff's abilities based on general assumptions about people with orthopedic injuries working as forklift

Co., Civ. No. 09-721, 2011 WL 6719776, *11 n.12 (D.N.J. Dec. 21, 2011).

operators.  Since this is a far cry from Dr. Introcaso's actual report, the Court rejects this basis for reconsideration.

The Court notes, however, that in reviewing this motion, it became aware of the fact that both parties proceeded at summary judgment as though NGC had proved:  (1) that the relevant NGC decisionmakers understood Dr. Introcaso's handwritten report and its findings (as set forth above); (2) that the decisionmakers reviewed and relied on these findings as opposed to simply the report's conclusion; (3) that the decisionmakers relied on Plaintiff's failure to submit a note from his treating physician clearing him to return to work; and (4) that that the decisionmakers reviewed Plaintiff's work history, which supported Dr. Introcaso's assessment.  The parties may have presumed that these facts were too obvious to dwell on, and since they were not disputed, the Court did not consider them. The <u>Jansen</u> opinion, however, underscores the importance of these issues:

> In arriving at its decision, the employer should review not only the report of its medical experts, but also relevant records such as the employee's work and medical histories. The employer thereby can <u>independently reach</u> an objectively reasonable decision about such matters as the probability that the employee will cause harm to himself or other employees.

<u>Jansen</u>, 541 A.2d 682, 690 (N.J. 1988) (internal citations omitted) (emphasis added).  If the Court's presumption was incorrect, however, and these issues were in fact disputed, the parties may file submissions addressing the matter as set forth below.

**Second**, Plaintiff argues that the Court erred by permitting NGC to rely on medical evaluations, which occurred more than a year before or more than a year after its decision to terminate Plaintiff.

The relevant inquiry in an employment discrimination case is the employer's state of mind <u>at the time</u> of its decision; in other words, whether it acted with the prohibited discriminatory animus. <u>See</u>, <u>e.g.</u>, <u>Donahue v. Consol. Rail Corp.</u>, 224 F.3d 226, 232 (3d Cir. 2000). Facts, which the employer became aware of only after discharging the plaintiff, are therefore irrelevant to this analysis.

Notably, Plaintiff has not identified any medical records, which the Court erroneously relied on in making its ruling. Indeed, the Court was well aware of the above rule in deciding this matter and proceeded accordingly. Unfortunately, however, since neither party clarified which medical records NGC and Dr. Introcaso actually reviewed before terminating Plaintiff, the Court was unable to include this information in the facts section of the Opinion. As such, the background facts were "drawn from the parties' Rule 56.1 Statements of Material Fact and [] construed in the light most favorable to Plaintiff." <u>Sunkett</u>, 2011 WL 6719776 at *1 n.1. To the extent Plaintiff seeks reconsideration of this Court's Opinion based on his "buyer's remorse" about conceding certain facts at summary judgment, the Court rejects this argument. <u>Id.</u>

**Third,** Plaintiff complains that the Court failed to consider the "totality" of his arguments during its burden-shifting analysis under

8

<u>Jansen</u>.   Plaintiff does not provide any more specifics from which the Court may glean how he believes the Court should have addressed his arguments.   Since his opposition brief at summary judgment failed to conduct the relevant burden-shifting analysis, it was unclear to the Court when Plaintiff wished to assert each of his arguments.   Despite Plaintiff's lack of assistance, the Court nevertheless considered all of his arguments at each stage of the analysis.   Certain arguments, however, the Court did not find persuasive and therefore rejected outright.   For example, Plaintiff attempted to rely on his former supervisor David Cotton's testimony to demonstrate a discrepancy between the job description relied on by Dr. Introcaso (which reflected that Plaintiff had to "occasionally" lift 50 to 75 pounds) and Cotton's estimate that Plaintiff would be expected to lift "about 40 pounds" on a "consistent basis".   <u>Sunkett</u>, at *10; Cotton Dep. 10:1-7, Pl.'s Ex. 2, Dkt. Ent. 30-2.   Cotton's testimony, however, was not inconsistent with the job description, and the Court therefore rejected this argument.   Cotton was referring to the amount Plaintiff was required to lift on a "<u>consistent</u> basis", whereas the job description referred to the amount Plaintiff was required to lift only "<u>occasionally</u>".   <u>Id.</u>   Further, Cotton's estimate amounted to unsupported speculation, which the Court could not credit, and in any event, its probative value was doubtful.   <u>Sunkett</u> at *10.

      For these reasons, it is hereby:

9

**ORDERED** that Plaintiff's motion for reconsideration is DENIED; and it is further

**ORDERED** that Plaintiff's motion for an extension of time is DISMISSED AS MOOT; and it is finally

**ORDERED** that the parties may file submissions, as set forth above, on or before **October 10, 2012**.


Dated: September 27, 2012          s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   United States District Judge